**GREISSING, Plaintiff, v. RENKERT et, Defendants.**

Common Pleas Court, Summit County.

No. 167701. Decided August 23, 1949.

Roy E. Browne, Law Director, Nathan Koplin, Asst. Law Director, Akron, for plaintiff and the Civil Service Commission.

C. G. Roetzel and John Ulman, Akron, for defendant clerk Mr. Butler.

### OPINION

By WATTERS, J.

In this action, President of the Council of the City of Akron filed his petition against the members of the Civil Service Commission of the City of Akron praying for a declaratory judgment determining whether or not the position of the Clerk of the Council of the City of Akron is in the classified or unclassified Civil Service of the City of Akron. The original plaintiff and defendants were represented by the Law Director and Assistant Law Director of the City of Akron. After the commencement of the action, Claude M. Butler, Clerk of Council, upon his own motion, was made a party defendant and filed his answer herein. The case was heard upon the pleadings, stipulations, both written and oral, entered into at the trial, and supplemental stipulation filed thereafter.

The facts are covered by the stipulation and supplemental stipulation of facts, which are as follows:

## STIPULATION.

"It is stipulated by all the parties to this action as follows:

1. The City of Akron is a municipal corporation existing under the constitution and general laws of the State of Ohio, and pursuant to said constitution the electors of said city adopted a home rule charter which is now in full force and effect.

2. Plaintiff, Francis J. Greissing, is the duly elected, qualified, and acting President of the Council of the City of Akron, and brings this action on behalf of himself and all of the other members of the Akron City Council.

3. Defendants, Fred E. Renkert, Harlan A. Schwab and Fleet W. Perrine, are the duly appointed, qualified and acting Civil Service Commissioners of the City of Akron, Ohio.

4. Defendant, Claude M. Butler, took the Civil Service examination for the position of Clerk of Council of the City of Akron prior to the 8th day of November, 1938, said examination having been formulated and conducted under the rules and regulations and under the control and supervision of the Civil Service Commission of the City of Akron. Defendant, Claude M. Butler, satisfactorily passed said examination and at the request of the Council of the City of Akron the said Civil Service Commission certified to said council on November 8th an eligible list of three (3) persons for said position, the name of defendant, Claude M. Butler, being included in and leading said list. From said certified list defendant, Claude M. Butler, was declared and appointed by the said Council to be the Clerk of Council of the City of Akron, Ohio. Said Claude M. Butler took the oath of said office and assumed the duties of same on or about the 15th day of November, 1938, and has held the position of Clerk of the Council of the City of Akron and served as said Clerk at all times since.

5. On or about the 14th day of August, 1924, a charter was approved by the voters of the City of Akron, which charter, as it then became effective, contained the following provision under the chapter entitled "The Council":

"Section 32. ELECTION BY COUNCIL—RULES, QUORUM. A majority of all the members of the council shall constitute a quorum to do business, but a less number may adjourn from time to time, and compel the attendance of absent members in such a manner and under such penalties as may be prescribed by ordinance. The council shall elect

one of its members as president, a clerk and such other officers and employees of its own body as may be deemed necessary. The Clerk shall keep the records of the Council and perform such other duties as are required of him by this charter, and as may be required by ordinance or resolution. All officers and employees chosen by the council shall serve during its pleasure. (V 26 p 33; Approved by voters Aug. 14, 1924.)"

Said charter also contained the following provisions under the chapter entitled "Civil Service":

"Section 105. CLASSIFICATION. The Civil Service of City is hereby divided into the unclassified and classified service.

(1) The unclassified service shall include:

(a) All officers elected by the people.

(b) The Chief Administrator.

(c) All directors of departments, including the Commissioner of Public Utilities.

(d) The members of all appointed boards or commissions, and advisory boards.

(e) The secretary of the Chief Administrator and of the Mayor, and one secretary and one assistant or clerk for each director of a department and for each board or commission except the civil service commission, whose employees shall be in the classified service.

(f) The clerk of council.

(g) Such heads of divisions, except fire and police, as the civil service commission shall from time to time by rule determine.

(h) All unskilled laborers.

(i) The assistants to the Director of Law.

(j) The staff of the Municipal University.

(2) The classified service shall comprise all positions not specifically included by this charter in the unclassified service. There shall be in the classified service two classes, to be known as the competitive class and the non competitive class.

(a) The competitive class shall include all positions and employments for which it is practicable to determine the merit and fitness by competitive examinations.

(b) The non-competitive class shall consist of all positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional or educational character, as may be determined by the rules of the Commission."

6. On or about August 31, 1937, Council of the City of Akron duly enacted Ordinance No. 272-1937 authorizing the submission to the electors of said City of proposed amendments to said charter relating to the Civil Service provisions thereof and including the amendment to said Section 105. The fourth section of said Ordinance No. 272-1937 was as follows:

"Section 4. Any provisions of these amendments, if the same shall be adopted by the electors, which shall be found inconsistent with or in conflict with any provision of the present charter shall be held to prevail insofar as inconsistency or conflict exists."

A complete copy of said ordinance was mailed to all registered electors of said City, as shown by the list provided by the Board of Elections, and said electors, by election on November 2, 1937, approved said amendments as submitted to them by said ordinance and thereby said amendments became a part of the charter of the City of Akron.

7. The charter of the City of Akron, as so amended and now in effect, is set forth and attached to the petition herein, and Section 105 thereof is as follows:

"Section 105. CLASSIFICATION. The civil service of the City is hereby divided into the unclassified and the classified service.

(1) The unclassified service shall include:

(a) All officers elected by the people.

(b) The directors of the departments of public service, finance and law.

(c) The members of all appointed boards or commissions, and advisory boards.

(d) The secretary to the Mayor.

(2) The classified service shall comprise all positions not specifically included by this charter in the unclassified service.

8. Defendants, Fred E. Renkert, Harlan A. Schwab and Fleet W. Perrine, as the Civil Service Commissioners of the City of Akron, have refused to classify and certify that the position of the Clerk of the Council of the City of Akron is in the classified service thereof. As a result thereof from and after the 8th day of November, 1938, defendant, Claude M. Butler, as Clerk of the Council of the City of Akron, has been deprived of all the rights, benefits and privileges arising out

of and incident to said position of Clerk being certified and included within the classified service of the City of Akron.

The foregoing stipulation of facts is signed and submitted by all of the parties subject to the right of any party to make objection at the trial to said stipulation or any part thereof upon the ground of incompetency, immateriality and irrelevancy and each party reserves the right to introduce further evidence."

## SUPPLEMENTAL STIPULATION

It is further stipulated by the parties to this action as follows:

1. On or about June 1, 1948, the Director of Law of the City of Akron rendered an opinion that the position of the Clerk of Council of the City of Akron was not included in the classified service of the Civil Service of the City of Akron. Immediately after said opinion, the Civil Service Commission caused the position of said Clerk of Council to be physically stricken from the list of classified services of said Civil Service of the City of Akron.

2. On or about July 27, 1948, Council of the City of Akron, by Ordinance No. 418-1948, provided an annual salary for the Clerk of Council of $4200.00 per year. Prior to the opinion of the Director of Law, mentioned in Supplemental Stipulation No. 1, the rules and regulations of the Civil Service Commission of the City of Akron provided an annual salary of $3600.00 for the position of the Clerk of Council for the grade according to which the position of Clerk of Council was listed by said Civil Service Commission prior to said opinion.

3. Since the enactment of said Ordinance No. 418-1948, defendant, Claude M. Butler, has been receiving a salary at the rate of $4200.00 per year.

4. At the time of the enactment of Ordinance No. 418-1948, Council of the City of Akron also passed a resolution directing the Director of Law of the City of Akron to commence this action to determine whether the position of the Clerk of the City of Akron was properly listed in the classified or unclassified service.

5. From approximately November 15, 1938, until approximately June 1, 1948, the position of the Clerk of Council of the City of Akron was included in the list of the classified Civil Service and defendant, Claude M. Butler, as such Clerk, was paid a salary established and determined in accordance with and by the rules and regulations of the Civil Service Commission of the City of Akron.

Defendant, Claude M. Butler, objects to the introduction of supplemental stipulations 1 to 3 inclusive on the ground that they are incompetent, irrelevant and immaterial. Plaintiff and defendants, except Claude M. Butler, object to the introduction of supplemental stipulations 4 and 5 upon the ground that they are incompetent, irrelevant and immaterial."

*  *  *  *

Counsel for plaintiff object to the competency, relevancy and materiality of original stipulation No. 4 on the theory that if the Council Clerk is not under Civil Service, it makes no difference whether he took an examination and was certified, if the Civil Service Commission lacked authority to give an examination in the first instance.

The Court will admit this evidence with exceptions to plaintiff, for whatever bearing it has, but the Court states that its final decision herein would have been the same were this evidence excluded.

In addition to the two stipulations Mr. Koplin, of counsel for the plaintiff, at the time of trial stated in substance, and Mr. Roetzel, counsel for defendant, Mr. Butler, agreed, that the records would show the following:

That the official records of the Akron City Council will show that subsequent to Claude M. Butler's appointment as clerk, in the years 1940, 1942, 1944, 1946 and 1948, at the first meeting held by said Council on the first Monday of January following their election, the members proceeded to organize, and proceeded to elect and did elect a Council Clerk, and assistant Council Clerk, the former each time being the defendant, Claude M. Butler.

However the defendant Butler, through his counsel, Mr. Roetzel, objected to such tendered offer of said admitted facts, and the admissibility thereof, on the ground that said facts are immaterial, irrelevant and incompetent.

The Court will admit this evidence with exceptions to the defendants.

It is all admissible as part of the history and background of the case.

### THE QUESTION PRESENTED.

IS THE POSITION OF CLERK OF THE COUNCIL OF THE CITY OF AKRON WITHIN THE CLASSIFIED SERVICE OF THE CIVIL SERVICE OF THE CITY OF AKRON, AND DEFENDANT, CLAUDE M. BUTLER, AS SAID CLERK OF COUNCIL, ENTITLED TO THE BENEFITS OF THE CIVIL SERVICE PROVISIONS OF THE CHARTER OF THE CITY OF AKRON AND ORDINANCES AND RULES AND REGULATIONS ADOPTED PURSUANT THERETO?

## THE LAW.

Without rewriting stipulation (5) of the original stipulation at this point, it will be noted that the original Charter of the City of Akron was amended and approved by the voters, August 14th, 1924, and contained Section 32, entitled "Election by Council-Rules-Quorum."

In part it provides "The Council shall elect one of its members as president, a clerk * * *." The Clerk's duties are defined, and then follows; "All officers and employees chosen by the Council shall serve during its pleasure."

Without doubt under said section and without reference to civil service provisions of the Charter before the amendment of Section 105, Council could hire and fire the clerk of the council at will. This was doubly true at the time of the adoption of the original Charter, as Section 105, entitled "Civil Service-Classification" specifically placed the Clerk of Council under the "unclassified service," as set forth under 1 (f) of said Section 105, which was in effect as part of the original Charter.

Thereafter on or about August 31, 1937, the Council duly enacted ordinance No. 272-1937, which authorized the submission to the electors of the City of Akron, of proposed amendments to the Civil Service provisions thereof, including the amendment of former Section 105.

The amendment was approved by the electors at the election on November 2, 1937. The electors as a part of the amendment adopted and approved Section (4) of the Ordinance 272-1937, which was in substance as follows: (See Stipulation 6)

"**That any amendment,** if adopted by the electors, which shall be found inconsistent with or in conflict with any provision of the charter being amended, **shall be held to prevail insofar as inconsistency or conflict exists.**" (Emphasis by this court.)

Then as a part of the amendment the electors approved Section 105 as it now is, as follows:

"Section 105. Classification. The civil service of the City is hereby divided into the unclassified and classified service.

(1) The unclassified service shall include:

(a) All officers elected by the people.

(b) The directors of the departments of public service, finance and law.

(c) The members of all appointed boards or commissions and advisory boards.

(d) The secretary to the mayor.

(2) The classified service shall comprise all positions not specifically included by this charter in the unclassified service."

The only places in the charter where any attempt at classification under the civil service is made, are under Sections 105 and 106 respectively. This is apparent by reading the whole charter, and by reference to the index of the charter itself.

Therefore reference to "this charter" under Section 105 part (2) refers only to those sections.

It is not readily believable that the framers of the amendment to original Section 105, which amendment obviously had for its purpose the adding of many more employees to the classified service list, for the sake of brevity would leave out section (f) which put the clerk under unclassified service, **if they intended** such position to remain under the unclassified service.

Any layman, which most voters are, would naturally assume that those not specifically mentioned under the unclassified list in amended 105 would be under classified service.

Surely they would not have section 32 in mind at all.

A voter would vote on amendment 105 with the words therein in mind, and would conclude that it meant what it said with no sleepers therein. He or she would assume the full classification under civil service was covered in Section 105 as amended.

I would interpret 105 as it now is, to put all on classified service who are not mentioned specifically in that section as being in unclassified service and not covered specifically in Section 106, except where the qualifications of certain applicants could not practically be determined by examination by the Civil Service Commission.

The matter was doubtless so determined at the time by the then Civil Service Commission. Otherwise why would the Commission give and Butler take the examination under the supervision of that body?

And why shouldn't a clerk of council and his assistants be under civil service? And why couldn't such employees' qualifications for such position be practically determined by competitive examinations by the Civil Service Commission?

The same cannot be said concerning such positions as assistant law director, the Akron University staff, and the like. The Civil Service Commission could not submit a practical competitive examination to test the qualification of a duly licensed lawyer or a professor duly trained in his work and authorized by a teacher's certificate to practice his profession.

In the agreed supplemental stipulation, from approximately November 15, 1938, until June 1, 1948, the position of Clerk of Council was placed and considered by the Commission to be under the classified service. This shows how that body and the Municipal government considered and interpreted Section 105 as amended.

From the three on the eligible list prepared and certified by the Commission, after the examination given by it, Mr. Butler, the high ranking applicant, was **appointed by Council** about November 15, 1938, and has been reappointed every two years since by the Council. There is nothing inconsistent about that. Such a situation does not put Mr. Butler on the unclassified list, in my opinion.

The evidence shows that he has received and accepted Forty-Two Hundred Dollars yearly salary fixed by Council for the position in July, 1948, from said time to date, whereas under the Civil Service Commission the salary was fixed at Thirty-Six Hundred Dollars per year. Surely in these times of increased cost of living he could hardly be blamed for this, especially where a doubt had arisen as to just what his status was under the charter as it now stands.

All agree that this is a question of local concern for a solution of which we must look to the charter, and not to the state law, as to Civil Service questions locally.

In the court's opinion Section 32 of the charter in so far as it is inconsistent with amended Section 105, is of no force and effect. Said Section 32, where inconsistent, is expressly repealed by Section 105 by virtue of Section (4) of the Ordinance 272-1937. (See supra and Stipulation 6)

This opinion being directly opposed to that of the Law Director of Akron rendered June 1, 1948, will and should be carried to the higher courts for final determination.

A journal entry will be prepared accordingly with exceptions.